IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLARK L. POSEY, JR., | ) | |
| #266851 | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:13-CV-943-WKW |
| | ) | [WO] |
| KIM THOMAS; FRANK ALBRIGHT; | ) | |
| VICTOR L. NAPIER; LT. RILEY; | ) | |
| VIC A. NUNN; CEDRIC HAMILTON; | ) | |
| and IRVIN HARRIS, | ) | |
| | ) | |
|     Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff Clark L. Posey, Jr. ["Plaintiff"], a state inmate, challenges the constitutionality of actions taken against him during his incarceration at the Kilby Correctional Facility ["Kilby"] in Mt. Meigs, Alabama.[1]  Named as defendants are Alabama Department of Corrections ["ADOC"] Commissioner Kim Thomas, Warden Frank Albright, Captain Victor L. Napier, Lieutenant Franetta Riley, Sergeant Vic. A. Nunn, Guard Cedric Hamilton, and Guard Irvin Harris ["Defendants"].  Plaintiff complains that on June 5, 2013, Defendants failed to protect him and subjected him to excessive force. Following that incident, Plaintiff alleges the various Defendants filed false disciplinary charges against him, denied him due process during the disciplinary proceedings, wrongly placed negative entries into his records, were deliberately indifferent to his serious medical

---

[1]During the pendency of this action Plaintiff was transferred to another state correctional facility. *Doc. No. 48* (transfer to Donaldson Correctional Facility).

needs and safety, and retaliatorily reclassified him and transferred him.  Plaintiff claims Defendants' acts violated his rights under the United States Constitution as well as state laws against assault, battery, and intentional infliction of emotional distress.  Plaintiff seeks damages, declaratory relief, and preliminary and permanent injunctive relief.

In accordance with the orders of the court, Defendants filed an answer,  special report, and supporting evidentiary material in response to the allegations contained in the complaint. *Doc. Nos. 31, 32, 35.*  The court then informed Plaintiff that Defendants' special report, may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment.  *Doc. No. 36.* Plaintiff filed a response[2] to the special report filed by Defendants. *Doc. No. 45.*  The court now deems it appropriate to treat Defendants' reports as motions for summary judgment. Thus, this case is now pending on Defendants' motions for summary judgment.  Upon consideration of these motions, the evidentiary materials filed in support thereof and the Plaintiff's response, the court concludes that the Defendants' motions for summary judgment are due to be granted in part and denied in part, and Plaintiff's motion for preliminary and permanent injunctive relief is due to be denied.

## I.  SUMMARY JUDGMENT STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

---

[2]Plaintiff at various points in his response states that he "avers" certain facts, but his response is not sworn under penalty of perjury or notarized. *Doc. No. 45.*  Plaintiff's complaint was verified, and thus the specific facts alleged in it are considered sworn. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists.

---

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find

for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).   Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . .").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami,*

*Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

6

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment on all but his claims against Defendants Harris and Hamilton for excessive force, failure to protect, and the accompanying state law claims against them. *Matsushita*, 475 U.S. at 587.

## II.  SUMMARY OF MATERIAL FACTS

The court views the following facts in the light most favorable to Plaintiff, the nonmoving party. According to his verified complaint, Plaintiff has a medical history of seven back surgeries and is handicapped in his left leg and foot. *Doc. No. 1* at ¶ 22. On June 5, 2013, while at Kilby, Defendant Officer Irvin Harris saw Plaintiff walking with two other inmates. *Doc. No. 32-8* at 2. As Harris approached the inmates, they switched direction and headed back to where they had come from. Harris ordered the inmates to stop and submit to a search. *Id.* The inmates stopped, and Harris conducted a search of one of the inmates but found no contraband. Plaintiff contends that during the search, Harris starting yelling at him to "spit it out." *Doc. No. 32-8* at 15 (Posey Use of Force Inmate Written Statement). Plaintiff states he had nothing in his mouth, but Harris starting choking him, then Officer

Cedric Hamilton hit Plaintiff twice on the left jaw, yelling "spit it out," and Hamilton continued punching Plaintiff in the upper left side and back area while Harris kept choking Plaintiff. *Id.* Plaintiff states he was "knocked to the ground and beaten with wooden night sticks which caused severe cut on Plaintiff's Face, Possible Broken Jaw, and various bruises on his Face and Torso. See Plaintiff's Statement." *Doc. No. 1 at ¶ 13.* Plaintiff states Hamilton stopped when Officer Sheppard said Plaintiff was secure. *Doc. No.* 32-8 at 15. Plaintiff states he had nothing in his hands, had no contraband, complied with the officers' orders, and did not hit or resist them. *Doc. No. 1 at ¶ 18; Doc. No. 1-1 at 4.* Inmate witness accounts corroborated Plaintiff's statements that he was not resisting officers. *Doc. No. 32-8* at 29 (statements from inmates Carroll and Roberts). Plaintiff states that directly after the June 5, 2013, incident, he was forced to sit on a bucket for several hours so that if he produced human waste the officers could examine it for contraband, but Plaintiff produced no contraband. *Doc. No.* 1 at ¶ 21; *Doc. No. 45* at 3. A later investigation revealed that Plaintiff said he could not urinate after the incident because his kidneys hurt from being struck with the baton. *Doc. No. 32-9* at 3.

In contrast to Plaintiff's version of the events, Defendant Harris avers that as he was searching one of the inmates on June 5, 2013, Plaintiff put his hand in his right front pants pocket. *Harris Aff. - Doc. No. 35-1* at 1. Harris states he ordered Plaintiff to put his hands on the fence, but Plaintiff refused. *Id.* Instead, according to Harris, Plaintiff tried to retrieve a clear bag containing a green, leafy substance from his right front pants pocket, and he

8

refused Harris' demands to give it to him.  Harris then tried to get the object, but Plaintiff grabbed Harris' hand, pushed Harris away, and tried to swallow the object.  *Id.* at 2.  Harris states he then grabbed Plaintiff's jaw to stop him from swallowing the object, and Plaintiff pushed and elbowed Harris, and Plaintiff tried to hit Harris' face.  *Id.*  Harris noticed Defendant Officer Cedric Hamilton arrive, and Hamilton called for assistance.  *Id.*  Harris states he ordered Plaintiff to stop resisting, but Plaintiff continued resisting, gripped the fence, refused to let go of the fence, and refused to lie down.  *Id.*  While Harris  continued to hold Plaintiff's jaw, Harris saw Hamilton's hand in motion but could not determine exactly what was happening.  Hamilton tried pulling Plaintiff away from the fence.  According to Harris, Plaintiff suddenly loosened his grip, and Harris and Hamilton then forced Plaintiff to the ground to be handcuffed.  *Id.*  Harris states he does not have access to any inmate's institutional file.  *Id.*

Defendant Hamilton avers he saw Harris conducting a pat search of Plaintiff and two other inmates, and another inmate advised Hamilton that Harris was in trouble.  *Hamilton Aff. - Doc. No. 35-2* at 1.  Hamilton then saw Harris and Plaintiff in a struggle, and Hamilton called for help and went to assist Harris.  Hamilton saw Plaintiff grabbing the fence and resisting Harris, who was holding Plaintiff's jaw.  *Id.*  Hamilton ordered Plaintiff to spit out the object in his mouth and get on the ground, but Plaintiff did not comply.  *Id.* at 2.  Hamilton avers Plaintiff then tried to hit Hamilton with his left fist, and Hamilton "struck Inmate Posey on the left jaw two (2) times with an open fist."  *Id.*  Plaintiff then grabbed the

fence and would not let go. *Id.* Hamilton tried pulling Plaintiff away from the fence. *Id.*
Hamilton then "struck Inmate Posey with [Hamilton's] hand on [Plaintiff's] left side to get
him to loosen his grip on the gate in order to restrain him." *Id.* Hamilton avers he did not
hit Plaintiff with a baton, and Hamilton did not have a baton in his possession during the
incident. *Id.* Hamilton avers he does not have access to inmates' institutional files. *Id.*

Defendant Lieutenant Franetta Riley was not present at the incident but responded to
Hamilton's call for help. *Riley Aff. - Doc. No. 32-4.* Plaintiff was in handcuffs when Riley
arrived, and Riley escorted Plaintiff to medical personnel for treatment. *Id.* at 2. Riley also
questioned Hamilton and Harris, and Riley asked them and Plaintiff to write statements.
Riley then reported the incident to Defendant Captain Victor Napier. *Id.* Riley did not
participate in Plaintiff's classification review. *Id.*

Defendant Victor Napier conducted a use of force investigation of the incident. *Doc.
No. 32-8 at 25-26.* After reviewing witness statements from inmates, Napier could not
determine whether the force used was justified, and he recommended launching an official
investigation. *Doc. No. 32-8 at 25.* Defendant Warden Frank Albright ordered an official
investigation. *Id.* at 27. Investigator Ron Cooper interviewed the officers, Plaintiff, and
several inmates, and he gathered other evidence. *Doc. No. 32-9.* Cooper completed his
investigation on February 24, 2014, and the results were presented to the Montgomery
County District Attorney's Office for grand jury review. *Doc. No. 32-9 at 9.* The record
does not include criminal charges against any Defendant.

On June 6, 2013, Plaintiff was served notice of disciplinary reports for failure to obey a direct order and assault on an officer. *Doc. No. 32-8* at 2, 28, 36-39, 43-44 (Incident KCF-13-00859); *Doc. No. 32-12* (Procedures for Inmate Rule Violations). Plaintiff was informed of his right to present oral or written statements and to present written questions for the witnesses. Plaintiff listed two inmate witnesses for the hearing. *Doc. No.* 32-8 at 28, 36-37, 43-44. Plaintiff maintains Harris and Hamilton wrote him false disciplinary reports to cover up their unlawful force against him. *Doc. No. 1* at ¶ 14. At the hearing before Defendant Vic Nunn, Harris and Hamilton testified, Plaintiff submitted questions for the witnesses, and Plaintiff's witnesses were allowed to testify, although Nunn refused to allow a few questions because he deemed them irrelevant. *Nunn Aff. - Doc. No. 32-5*; *Doc. No. 32-8* at 28-44. Plaintiff complains, however, that he was forced to attend the hearing without representation, that questions Plaintiff posed to the officers and witnesses were avoided or they were precluded from providing answers; that evidence of urine testing was not produced; and that Harris provided no evidence to corroborate statements that Plaintiff possessed a green leafy substance. *Doc. No. 1* at ¶¶ 15, 17, 19, 21.

Based on the evidence presented, Nunn found Plaintiff guilty of the assault and disobeying a direct order violations. *Doc. No. 32-8* at 29, 40, 46; *Doc. No. 32-5* at 2. Nunn provided a written statement of the evidence relied on and the reasons for finding Plaintiff violated the rules. *Doc. No. 32-8* at 29, 40. Nunn avers that Plaintiff asked for urinalysis results at the hearing, but Nunn was unaware of any testing or results, and such results would

11

have been irrelevant at the hearing because Plaintiff was not charged with any drug violation. *Doc. No. 32-5* at 1-2.  For the assault charge, Nunn punished Plaintiff with thirty-five days of disciplinary segregation, and forty-five days loss of telephone, visitation, and canteen privileges.  *Doc. No. 32-8* at 29.  For failure to obey a direct order, Nunn punished Plaintiff with forty-five days loss of telephone, visitation, and canteen/store privileges. *Id.* at 40. Nunn states he did not place false information in Plaintiff's institutional file.  *Doc. No. 32-5* at 2.  On June 14, 2013, Defendant Warden Albright upheld the sanctions.  *Albright Aff. - Doc. No. 32-2* at 1.  Plaintiff also received a Behavior Citation for being in an unauthorized area, which Napier and Nunn approved and for which Plaintiff lost thirty days of canteen, phone, and visiting privileges.  *Doc. No. 32-8* at 46; *Napier Aff. - Doc. No. 32-3* at 1.

On June 5, 2013, a nurse completed a "Body Chart" for Plaintiff and the officers, and Plaintiff's injuries were photographed.  *Doc. No. 32-8* at 6-10.  The nurse noted Plaintiff had a "nickel size hematoma" on the left side of his face near his ear, scratches and redness to the neck area, an abrasion to the shoulder area, redness and superficial abrasions on the left side and back area, and abrasions to the right elbow.  The nurse noted no acute distress.  *Id.* at 10; *Doc. No. 32-11* at 4.

Plaintiff states that on June 7, 2013, a doctor ordered that Plaintiff be transferred to an outside hospital for examination, but "Defendants" disregarded the order and instead brought Dr. Doshi into Kilby.  *Doc. No. 1* at ¶ 22.  Plaintiff maintains Dr. Doshi had loyalties to Kilby officials, she ordered Plaintiff's side to be x-rayed, and she prescribed Naprosyn

three times a day "in Direct Violation of Doctors order." *Id.* Plaintiff's medical file reveals no such order to transport him out of the institution. The only document that refers to an order is a communication from Plaintiff's father to the Alabama Attorney General's Office stating, "There was a federal court order issued on June 7, 2013 to have Clark transferred to an outside hospital for an examination, x-ray and MRI, etc." *Doc. No. 1-3.*

The medical records reveal that three days after the June 5, 2013, incident, Plaintiff submitted a sick call, complaining of pain in his neck, back, left side of his face, head, and that he had trouble urinating. He noted the request as his second request. *Doc. No. 32-11* at 5. On June 10, 2013, Plaintiff was examined and referred to Dr. Doshi, who documented no signs of head trauma, bruising, or ecchymosis in the trunk area, but Dr. Doshi noted mild tenderness around the left rib border. *Kinard Aff. - Doc. No. 32-7* at 2; *Doc. No. 32-11* at 8. Dr. Doshi ordered an x-ray, and she prescribed Plaintiff Ibuprofen and an analgesic balm. *Doc. No. 32-11* at 8-9. The x-ray was taken at Kilby, which has the capability to perform x-rays on site, and it was standard procedure in the ADOC to perform x-rays on site. *Doc. No. 32-7* at 2. The x-ray was negative for acute cardiopulmonary process. *Id.; Doc. No. 32-11* at 10. On June 25, 2013, Plaintiff submitted a sick call request complaining of pain in his left side, lower back, and neck as a result of the June 5, 2013, incident. *Doc. No. 32-7*, at 2; *Doc. No. 32-11* at 11. He was seen on June 27, 2013, and the certified nurse practitioner assessed him with very mild left flank/side/hip tenderness. *No. 32-11* at 14. Plaintiff was continued on his pain medicine and asked to return to the clinic as needed. *Id.* On July 14,

13

2013, Plaintiff submitted a sick call request complaining of low back pain, left flank discomfort, and stoppage of his medication. *Id.* at 16. The medical notes indicate Plaintiff was released from administrative segregation on July 18, 2013. *Id.*

On July 11, 2013, Plaintiff received notice of a reclassification hearing for him based on the disciplinary violations. *Doc. No. 32-8* at 62; *Doc. No. 32-10* (Custody and Criteria procedures). On July 15, 2013, Plaintiff was recommended for reclassification from medium to close custody "due to the assaulted behavior exhibited while housed at [Kilby Receiving and Classification Center] RCC," but two board members disapproved the recommendation, and approved medium custody. *Baggett Aff. - Doc. No. 32-6* at 2. On July 17, 2013, Plaintiff was approved for medium custody and security level V, and he transferred to William E. Donaldson Correctional Facility in October 2013. *Id.; Doc. No. 32-8* at 61, 72.

After Plaintiff was transferred to Donaldson, he submitted a sick call request on November 11, 2013, complaining that after the June 5, 2013, incident his neck and left side hurt him, and he could not sleep. *Doc. No. 32-11* at 17. He was treated on November 13, 2013, prescribed Tylenol for a week, and referred to the doctor. *Id.* at 19. Dr. Roy Roddam, M.D., saw Plaintiff on November 18, 2013, for complaints of pain in his neck and left side, tingling in fingers, and swelling hands. *Id.* at 22. Dr. Roddam assessed Plaintiff with pain in cervical spine and left rib cage with a history of trauma. *Id.* Dr. Roddam prescribed Plaintiff Ibuprofen, wrist splints for carpal tunnel syndrome, and ordered an x-ray. *Id.* Plaintiff received the wrist splints on November 18, 2013. *Id.* at 24. The x-ray revealed no

spine abnormality, but it showed possible pneumonia developing on the right side, not left side. *Id.* at 22; *Doc. No. 32-7* at 2. A follow-up x-ray was taken about a month later, and it was not significantly changed. *Doc. No.* 32-7 at 3; *Doc. No. 32-11* at 23.

### III. DISCUSSION

### A. Absolute Immunity

To the extent the alleged constitutional violations Plaintiff lodges against Defendants are made against them in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florence*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia*

*Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B. Commissioner Kim Thomas

Plaintiff names as a defendant Kim Thomas, the ADOC Commissioner.  In particular, Plaintiff alleges Thomas was deliberately indifferent to Plaintiff's safety and medical needs. Thomas avers that he is not involved in the daily incidents at each correctional facility, and he has no personal knowledge of Plaintiff or the matters that Plaintiff alleges in his complaint regarding the June 5, 2013, incident.  *Thomas Aff. - Doc. No. 32-1* at 1.  Thomas further avers that all medical care is provided by Corizon, an independent contract medical provider. Thomas states he does not make decisions regarding medical care, and he has no personal knowledge of Plaintiff's medical condition or violation of any of his rights.  *Id.* at 2.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C.

§ 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability.).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.  Thus, liability for excessive force against correctional officers could attach to defendant Thomas only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation."  *Cottone*, 326 F.3d at 1360.

Plaintiff has presented no evidence which creates a genuine factual dispute about the claims against Defendant Thomas.  Rather, it is undisputed that Thomas did not participate in the alleged excessive force incident or the subsequent acts of Defendants.

In light of the foregoing, Thomas may be held liable for decisions of Defendants only if his actions bear a causal relationship to the purported violation of Plaintiff's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendant Thomas, Plaintiff must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so. . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Thomas] directed the [facility's staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from

17

doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Plaintiff has failed to meet this burden. Plaintiff relies on *Allen v. Barksdale*, 32 So.3d 1264 (Ala. 2009), to show a history of widespread abuse. But the Alabama Supreme Court's decision in *Barksdale* did not concern widespread use of excessive force at Kilby. Instead, it concerned access to public records under Alabama's Open Records Act for inmates at several Alabama institutions, including Kilby. *Id.* at 1267, 1274.

The record before the court contains no probative evidence to support an inference that Thomas directed Defendants to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action. In addition, Plaintiff has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Thomas failed to take corrective action. Finally, the undisputed evidentiary materials submitted demonstrate that the challenged act did not occur pursuant to a policy enacted by Thomas. Thus, the requisite causal connection does not exist in this case, and liability under the custom or policy standard is not warranted. Summary judgment is therefore due to be granted in favor of Defendant Thomas.

## C.  Due Process

Plaintiff alleges that he was denied due process during the disciplinary proceedings connected to the June 5, 2013, incident. Plaintiff avers he was disciplined with trumped up

allegations used to justify the unlawful use of force used against Plaintiff. He also maintains he had no drugs when he was searched. He further complains he was denied assistance in preparation or representation for the disciplinary hearing and denied the opportunity to have witnesses testify or answer questions. Plaintiff's discipline for the assault violation included thirty-five days of disciplinary segregation and forty-five days loss of telephone, visitation, and canteen privileges. For failure to obey a direct order, Plaintiff lost forty-five days of telephone, visitation, and canteen privileges. For being in an unauthorized area, Plaintiff lost canteen, phone, and visiting privileges for thirty days.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see, e.g., Vitek v. Jones*, 445 U.S. 480, 492-93 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin*, 515 U.S. at 484; *see, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart*, 724 F.2d 1493, 1497-98 (11th Cir. 1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to

19

more adverse conditions of confinement. *Sandin*, 515 U.S. at 485-86 (disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) (No liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) (prisoner has no constitutional right to be confined in a particular institution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Thus, the deprivations imposed upon Plaintiff based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id.* This court must therefore determine whether the actions

20

about which Plaintiff complains involve the deprivation of a state-created liberty interest as

defined by the standard set forth in *Sandin.*

As the Supreme Court opined,

> *Sandin* involved prisoners' claims to procedural due process protection
> before placement in segregated confinement for 30 days, imposed as discipline
> for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt
> v. Helms*, 459 U.S. 460 (1983), in particular, had employed a methodology for
> identifying state-created liberty interests that emphasized "the language of a
> particular [prison] regulation" instead of "the nature of the deprivation."
> *Sandin*, 515 U.S. at 481.   In *Sandin*, we criticized this methodology as creating
> a disincentive for States to promulgate procedures for prison management, and
> as involving the federal courts in the day-to-day management of prisons. *Id.*
> at 482-83.   For these reasons, we abrogated the methodology of parsing the
> language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in
> prisoner regulations has strayed from the real concerns undergirding the liberty
> protected by the Due Process Clause. The time has come to return to the due
> process principles we believe were correctly established in and applied in
> *Wolff* and *Meachum.*   Following *Wolff*, we recognize that States may under
> certain circumstances create liberty interests which are protected by the Due
> Process Clause. But these interests will generally be limited to freedom from
> restraint which, while not exceeding the sentence in such an unexpected
> manner as to give rise to protection by the Due Process Clause of its own
> force, nonetheless imposes atypical and significant hardship on the inmate in
> relation to the ordinary incidents of prison life." *Id.* at 483-84 (citations and
> footnote omitted).
>
> After *Sandin*, it is clear that the touchstone of the inquiry into the
> existence of a protected, state-created liberty interest in avoiding restrictive
> conditions of confinement is not the language of regulations regarding those
> conditions but the nature of those conditions themselves "in relation to the
> ordinary incidents of prison life." *Id.* at 484.

*Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Applying the *Sandin* inquiry, the court concludes that the temporary loss of canteen,

telephone and visitation privileges and short-term confinement in segregation "though

concededly punitive, do[ ] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff.[4]  *Sandin*, 515 U.S. at 485.  In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484. Consequently, Defendants' motion for summary judgment regarding Plaintiff's due process claim is due to be granted.

"To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy."  *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (quotations marks and citation omitted).  Plaintiff has not shown his due process rights were wronged, and he provides no facts specifying when or how an agreement to violate Plaintiff's rights occurred.  Consequently, Defendants' motion

---

[4]Even assuming Plaintiff had a right to due process in the challenged disciplinary proceedings, the failure to provide representation and allow an inmate to ask any questions he wished of witnesses did not violate this right.  While it is true that *Wolff* recognized an inmate's right to call witnesses and submit documentary evidence, that decision does not afford prisoners unlimited rights to call witnesses or submit evidence in disciplinary hearings.  The Court in *Wolff* acknowledged that prison officials have the "extraordinarily difficult" task of operating correctional institutions, which necessarily entails the responsibility for the safety of staff and inmates and was reluctant to extend to prisoners the "unqualified right to call witnesses" in prison disciplinary proceedings.  Instead, the Court extended to prison officials the "necessary discretion" to place limits on an inmate's right to call witnesses or present documents and made it clear that prison authorities must be allowed to maintain flexibility in the way they conduct disciplinary hearings.  *Wolff*, 418 U.S. 566-67.  The Court further noted that an unrestricted right to call witnesses carries "the potential for disruption" and that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority."  *Id.* at 566. In light of the foregoing, Plaintiff's allegations do not indicate that he was deprived the minimum due process required by *Wolff* and therefore does not state a due process claim.

for summary judgment on Plaintiff's conspiracy claim is due to be granted.

### D.  Negative Entries and Retaliation

Plaintiff claims that he was reclassified and transferred[5] to a more violent prison "out of retaliation."  *Doc. No. 1* at ¶ 24.  Plaintiff further claims "Defendants have placed Negative entries into Plaintiffs Prison Records because of the action being sued about."  *Id.* ¶ 26.  Plaintiff was not actually reclassified to close custody but rather remained in medium custody.  *Doc. No. 32-8* at 72-73.  His transfer to Donaldson was the result of his assignment to a security level V facility.  *Id.* at 61-72.

Prison officials cannot retaliate against inmates for exercising their constitutional rights.  *See O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011).  Plaintiff, however, has not identified what right he was exercising that caused him to be transferred.  For example, to state a claim for retaliation for the exercise of the right to freedom of speech, a prisoner must allege that "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]."  *Id.* (alterations in original, quotation marks and citation omitted).

---

[5]Plaintiff states that inmates who were his witnesses at the disciplinary proceeding also were transferred.  *Doc. No. 1* at ¶ 25.  The court does not address these allegations because Plaintiff can bring suit only to redress his own injuries.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992) (plaintiff must have suffered a personal injury).

Plaintiff cannot prevail on his retaliation claim because he fails to identify what right he was exercising that caused Defendants to retaliate by transferring him.  He also does not identify which of the named Defendants engaged in the alleged retaliation.  Likewise, Plaintiff does not identify what "negative entries" were placed in his prison records after he filed suit. Under the circumstances, Plaintiff cannot show he suffered retaliation in violation of his First Amendment rights, and summary judgment on the claim is due to be granted to all the Defendants.

### E.  Qualified Immunity, Excessive Force, and Failure to Protect

#### 1. Qualified Immunity

With respect to Plaintiff's excessive force claim lodged against Defendants Harris and Hamilton in their individual capacities, they argue they are entitled to qualified immunity. However, "'there is no room for qualified immunity' in Eighth Amendment . . . excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful. *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)." *Danley v. Allen,* 540 F.3d 1298, 1310 (11th Cir. 2008) (overruled on other grounds for use of heightened pleading requirement in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)*.*  Thus, a qualified immunity defense is not available when a plaintiff properly pleads the use of

excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Id.* at 1302; *see also Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Accordingly, this court will consider whether Plaintiff's allegations that Defendants Hamilton and Harris used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights. In doing so, the court does not treat the findings in Plaintiff's disciplinary proceedings as an answer to the Eighth Amendment question. The Court of Appeals has explained that even if prison disciplinary proceedings satisfy due process sufficiently to negate a retaliation claim, such internal prison findings do not "usurp judicial fact finding outside the context of a retaliation claim." *Mathis v. Adams*, 577 Fed. Appx. 966 (11th Cir. Aug. 19, 2014) (district court erred in ruling that prisoner raising "excessive-force claim[] could not dispute the factual findings made in internal prison disciplinary hearings"); *see also O'Bryant v. Finch*, 637 F.3d 1207, 1215-16 (11th Cir. 2011) ("If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process *and* there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report.").

   2. *Excessive Force Claim Against Harris and Hamilton and Related State Law Claims*

   Plaintiff maintains that on June 5, 2013, Defendants Harris and Hamilton subjected him to excessive force when he showed no signs of being a threat to the officers. Claims of

excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard for evaluating such excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (relying on *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). This standard contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. Factors to consider in making this determination include "the extent of injury suffered," "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (citation omitted); *see also Whitley*, 475 U.S. 321 (listing factors); *Skrtich*, 280 F.3d at 1300-01. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. 321. The "absence of serious injury" provides some indication of the level of force used, and the "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de*

*minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson,* 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (further quotation marks omitted)). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam). In *Wilkins*, the Supreme Court held that an inmate stated an Eighth Amendment excessive force claim when he alleged "he was punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation,'" and he suffered "a bruised heel, back pain, and other injuries requiring medical treatment." *Id.* at 38; *see also Hall v. Bennett,* 447 F. App'x 921, 923-24 (11th Cir. 2011) (unpublished) (per curiam) (citing *Wilkins,* 559 U.S. at 37-38) ("[W]hile [plaintiff's] medical reports did not note any obvious injuries, we are mindful of the fact that the focus of the inquiry is on the nature of the force applied, not the extent of the injury."). Recognizing that the relief in such a case could be slender, the Court added that "even if [the inmate] succeeds, the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover." *Wilkins*, 559 U.S. at 40.

Defendants Harris and Hamilton argue that the use of force against Plaintiff on June 5, 2013, was justified after Plaintiff refused orders, attempted to hide or swallow contraband, resisted officers, and acted in an aggressive manner towards them. Under the circumstances,

27

they argue, Harris' and Hamilton's use of force was reasonable and done for the purpose of restoring order and not maliciously or sadistically.  Defendants further maintain that Plaintiff may not prevail on his excessive force claim due to the minor nature of his injuries.

In contrast to Defendants' version of the events, Plaintiff maintains that he was not combative, abusive, or disobedient with Defendants Harris and Hamilton on June 5, 2013, and, therefore, their use of force against him was unnecessary and unprovoked.   In his verified complaint and in his response to Defendants' reports, Plaintiff maintains that Hamilton hit Plaintiff more than twice in the head and beat him, that Harris choked and beat him, that they caused him to suffer bruises, cuts, headaches, and back pain, and that the force used was grossly abusive and unnecessary.  *Doc. No. 1* at 7; *Doc. No. 45* at 1.  Plaintiff's case is similar to the scenario in *Bennett,* where the parties present "two competing, contradictory stories of what happened," and this court cannot "improperly weigh[] the witnesses' credibility by favoring [Defendants'] account over [Plaintiff's]." *Bennett,* 447 F. App'x at 924.

Although Plaintiff's injuries were not serious, the United States Supreme Court in *Wilkins* held that the minor nature of an inmate's injuries is not dispositive of an excessive force claim.  *Wilkins*, 559 U.S. at 34 (Dismissal of "a prisoner's excessive force claim based entirely on . . . [a] determination that his injuries were 'de minimis' [is improper] . . . [as it] is at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury. . . ."); *Bennett,* 447 F. App'x at 923-24

28

("[W]hile [plaintiff's] medical reports did not note any obvious injuries, we are mindful of the fact that the focus of the inquiry is on the nature of the force applied, not the extent of the injury."). The nature of the injuries suffered by Plaintiff will, however, remain relevant to whether Officers Harris and Hamilton actually used force as described by Plaintiff and whether they acted "'maliciously and sadistically'. . . ." *Wilkins*, 559 U.S. at 40.

Viewing the facts in the light most favorable to Plaintiff, as the court must at this stage in the proceedings, the court concludes Officers Harris and Hamilton are not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive these Defendants' motion for summary judgment regarding the excessive force claim lodged against them. *Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material fact exist regarding the use of force and whether Officers Harris and Hamilton acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment with respect to the excessive force claim presented against Defendants Harris and Hamilton in their individual capacities is due to be denied. The court likewise concludes that, at this stage of the proceedings, Harris and Hamilton are not entitled to summary judgment on Plaintiff's state law claims of assault, battery, and intentional infliction of emotional distress[6] presented against them in their personal capacities. *Doc. No. 1* at ¶ 32.

### 3. Failure to Protect and Unsafe Conditions

Plaintiff maintains that all the Defendants failed to protect him from the assault. *Doc.*

---

[6]Defendants acknowledge that Plaintiff raises a state claim of intentional infliction of emotional distress, *Doc. No. 35* at 2, but their report does specifically address it, *id.* at 13-15.

*No. 1* at ¶ 31.  Defendants argue that they are protected by qualified immunity.  As previously discussed, a defense of qualified immunity is generally unavailable in cases involving excessive force because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation.  *Skrtich*, 280 F.3d at 1301.  A defendant is not entitled to qualified immunity when a plaintiff properly pleads excessive force resulting from a failure to protect by the defendants.  Plaintiff has properly pled his claim for relief against Defendants Harris and Hamilton.  Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment.  *Id.* Accordingly, this court will consider the sufficiency of Plaintiff's allegations that Defendants failed to protect him from the use of excessive physical force.

Jail officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A constitutional violation occurs only when a plaintiff establishes the existence of  "a substantial risk of serious harm, of which the official is subjectively aware,  . . . and [that] the official does not respond[] reasonably to the risk'. . . ."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(*en banc*), *quoting Farmer*, 511 U.S. at 844.  Thus, in order to survive summary judgment on this claim, Plaintiff  is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate

indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38; *Wilson v. Seiter,* 501 U.S. 294, 299 (1991). . . . Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Plaintiff asserts that all the Defendants failed to protect him from use of excessive physical force.  They all deny violating Plaintiff's constitutional rights.  Based on the previous discussion regarding Defendants Harris' and Hamilton's alleged use of excessive physical force on Plaintiff on June 5, 2013, however, when viewed in the light most favorable to Plaintiff, a reasonable jury could find that Harris and Hamilton had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that these defendants actually drew this inference, and thereafter, ignored this risk. The allegations in Plaintiff's complaint and in response to Defendants' reports, taken by the court as true at this juncture, indicate that Harris and Hamilton were together during the assault on Plaintiff and neither stopped the other.  The court, therefore, concludes that Harris and Hamilton are not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive a motion for summary judgment.  Consequently, the motion for summary judgment relative to the alleged failure to protect Plaintiff's safety by Defendants

Harris and Hamilton is due to be denied.

The same cannot be said for the remaining Defendants.   It is undisputed that Defendant Riley did not arrive at the scene of the alleged excessive force until after Plaintiff already was subdued.   None of the other Defendants were even present.   Plaintiff makes no allegation that these Defendants knew the events would occur.   Plaintiff argues Kilby had a history of widespread abuse, but as previously discussed, Plaintiff's situation is distinguishable from the circumstances he points to in *Allen v. Barksdale*, and Plaintiff has not come forward with any evidence of widespread abuse that would have placed the Defendants on notice that a constitutional right needed to be corrected.   The court therefore concludes that Plaintiff has not demonstrated a genuine issue of material fact on the question whether the remaining Defendants were deliberately indifferent to another officer's use of excessive force against Plaintiff.   *See Skrtich*, 280 F.3d at 1301 ("officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance").   The motion for summary judgment relative to the alleged failure to protect by Defendants Albright, Napier, Riley, and Nunn is therefore due to be granted.

## F.  Medical Care

Plaintiff alleges that on June 7, 2013, a doctor ordered him to be transferred to a hospital outside of Kilby for examination and testing, but instead Dr. Doshi, who has loyalties to Kilby officials, disobeyed the order and treated Plaintiff at Kilby.   *Doc. No. 1* at

¶ 22.  "[D]eliberate indifference by prison personnel to an inmate's serious medical needs violates the inmate's right to be free from cruel and unusual punishment.  *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976)). To succeed on a deliberate indifference to medical care claim, Plaintiff must show (1) a serious medical need, (2) the defendant's deliberate indifference to the need, and (3) a causal connection between the defendant's indifference and the plaintiff's injury.  *Mann v. Taser Int'lInc.,* 588 F.3d 1291, 1306 (11th Cir. 2009).

Even assuming Plaintiff had a serious medical need, he cannot show on this summary judgment record that any of the named Defendants were deliberately indifferent to Plaintiff's medical needs.  Deliberate indifference requires a defendant's subjective awareness of a risk of serious harm, disregard of the risk, and conduct amounting to more than gross negligence. *See Mann*, 588 F.3d at 1307 (citation omitted); *see also Farmer*, 511 U.S. at 836-37 (defining deliberate indifference).  Thus, "mere medical malpractice" or "a simple difference in medical opinion" is insufficient to support a finding of deliberate indifference.  *Waldrop,* 871 F.2d at 1033.  But a doctor may be found liable for deliberate indifference if she decided "to take an easier and less efficacious course of treatment," if she failed "to respond to a known medical problem," or if she provided "grossly incompetent or inadequate care" that shocks the conscience.  *Id.*  "Deliberate delay" in providing care to a serious or painful injury also constitutes deliberate indifference. *Brown v. Hughes,* 894 F.2d 1533, 1538 (11th Cir. 1990).

Plaintiff does not allege that any of the named Defendants personally participated in

33

Plaintiff's medical treatment, or that his treatment was subpar or exacerbated his injuries. The self-serving statements by plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records that include no order for him to be evaluated outside the institution. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). Plaintiff's evidence, at best, is that there was an order for him to be evaluated outside the institution. Plaintiff points to no errors in his medical treatment, and his difference of opinion with medical professionals as to the appropriate course of treatment is insufficient to constitute deliberate indifference. *See Waldrop*, 871 F.2d at 1033. All of the Defendants are entitled to summary judgment on his medical claims.

## IV. INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff seeks "[a] preliminary and permanent injunction ordering Defendants to Remove All False and Erroneous Entries placed in Plaintiffs Prison Record as a result of the Defendants Actions in this Case, And to cease any physical contact or excessive Force and Emotional Distress in Form of Harrassment" [sic]. *Doc. No. 1* at ¶ 38. Plaintiff, however, is no longer incarcerated at Kilby. *Doc. No. 39.* The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the

court that Plaintiff is no longer incarcerated at Kilby, his request for equitable relief has been rendered moot.

To the extent Plaintiff requests a preliminary injunction because he continues to suffer a present injury from false or erroneous entries in his prison record, his motion for preliminary injunctive relief is without merit.  "A district court may issue a preliminary injunction where the moving party demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."  *Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *Id.* (internal citations and quotations omitted).  "[E]ven if Plaintiff[] establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

First, the court finds that Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of his claim. As previously explained, the court has determined that summary judgment is due to be granted to Defendants on Plaintiff's due process claim. Plaintiff also fails to show the second factor, that is, his allegedly erroneous prison record

constitutes a substantial threat that he will suffer a requisite irreparable injury absent issuance of the requested preliminary injunction. The third factor, balancing potential harm to the parties, clearly weighs more heavily in favor of the Defendants as issuance of the requested injunction would severely undermine the authority of correctional personnel and limit their ability to enforce rules governing inmate behavior.  In essence, granting the relief requested by Plaintiff would provide an inmate the means by which to circumvent prison disciplinary rules. Finally, the public interest element of the equation is, at best, a neutral factor or weighs in favor of Defendants at this juncture. Thus, Plaintiff has failed to meet his burden of demonstrating the existence of the necessary prerequisites for issuance of a preliminary injunction.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.   Plaintiff's request for injunctive relief be DENIED as moot or without merit;

2.  Defendants' motion for summary judgment with respect to the claims for monetary damages lodged against them in their official capacities be GRANTED as all Defendants are entitled to absolute immunity from these claims;

2.   The motion for summary judgment filed on behalf of Defendants Thomas, Albright, Napier, Riley, and Nunn in their individual capacities be GRANTED;

3. The motion for summary judgment filed on behalf of Defendants Harris and Hamilton with respect to Plaintiff's Eighth Amendment excessive force and failure to protect

36

claims and state law claims of assault, battery, and intentional infliction of emotional distress lodged against them in all aspects of their individual capacities be DENIED;

4.   The motion for summary judgment filed on behalf of Defendants Harris and Hamilton regarding all claims contained in the complaint with the exception of Plaintiff's Eighth Amendment excessive force and failure to protect claims and the state tort claims of assault, battery, and intentional infliction of emotional distress in their individual capacities be GRANTED;

5.   This case be set for a set for a jury trial on Plaintiff's excessive force, failure to protect, assault, battery, and intentional infliction of emotional distress claims against Defendants Harris and Hamilton in their individual capacities.

It is further

ORDERED that on or before February 11, 2016, the parties may file an objection to the Recommendation.  Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 28th day of January, 2016.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE